In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00190-CR


______________________________




JANETTE GOLDSMITH, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 5th Judicial District Court


Bowie County, Texas


Trial Court No. 00F0723-005




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Janette Goldsmith appeals her conviction by a jury for theft by a public servant in an amount
of $100,000.00 or more, but less than $200,000.00. The jury assessed her punishment at ten years'
imprisonment, but recommended that the imposition of her sentence be suspended, that she be placed
on ten years' community supervision, and that she be fined $10,000.00. The trial court sentenced her
accordingly. On appeal, Goldsmith challenges the legal sufficiency of the evidence.

 Goldsmith was the chief deputy tax assessor for Bowie County in charge of the assessor's
Texarkana office. The assessor's office registers vehicles and collects sales taxes. The Texarkana
office regularly took in between $20,000.00 and $70,000.00 on a normal day. Transactions were
by check or in cash, with cash accounting for approximately $5,000.00 to $6,000.00 per day. 

 Much of the testimony at trial centered around how cash was handled in the Texarkana office. 
Each cashier worked at a computerized cash register and was responsible for his or her cash drawer. 
There was also a drawer for Parks and Wildlife transactions, to which everyone had access. Parks
and Wildlife transactions accounted for about two percent of the funds received in the assessor's
office.

 Each cashier had to reconcile the cash and checks in his or her drawer each day against a
computer-generated report showing the transactions that occurred at that drawer that day. Shortages
or overages sometimes occurred, but those shortages or overages rarely amounted to more than a few
dollars. Goldsmith often assisted the cashiers in finding the cause of overages and shortages. In any
event, overages and shortages occurred fairly infrequently. 

 Each cashier was responsible for turning in a reconciliation report, along with the cash and
checks from his or her drawer, to Goldsmith each day. Goldsmith was to prepare a daily summary
report of the transactions at each drawer and deposit the cash and checks in the bank. Deposits were
to be made twice each day: in the morning and in the late afternoon. Goldsmith then was to forward
the daily summary report with a bank-stamped deposit slip to the tax assessor's main office in New
Boston. Several witnesses for both the State and Goldsmith testified she was the only person who
prepared the daily summary reports and made the deposits in the two-year period before the events
in this case took place. 

 Treva Braley, who works at the New Boston office, testified she received the daily summary
reports from the Texarkana office. She checked the daily summary reports against the computerized
activity reports for the Texarkana office. She testified that the daily summary reports were always
in Goldsmith's handwriting and that, if she ever had a question concerning a summary report, she
always discussed her question with Goldsmith. She also testified the deposit slips were in
Goldsmith's handwriting. After checking the daily summary report, Braley would forward the report
to Pansy Baird, the Bowie County Treasurer.

 The Parks and Wildlife drawer was reconciled on the first and the fifteenth of each month. 
There was considerable testimony regarding the practice of employees at the assessor's office (and
the Assessor herself) of writing personal checks, placing those checks in the Parks and Wildlife
drawer or in their own drawer, and taking out cash. The record showed these personal checks
sometimes remained in the Parks and Wildlife drawer several months, being replaced by "petty cash"
when the drawer was reconciled and then returned to the drawer later.

 Baird testified that, in September 2000, she began to notice the daily summary reports were
coming in from the Texarkana office six or seven days late. She contacted Toni Barron, the Bowie
County Tax Assessor, about the problem. She also prepared a memorandum for Tom Kesterson,
the Bowie County Auditor, showing a pattern of tardy daily summary reports and deposits beginning
in August 2000. 

 In late September, Kesterson and Baird went to see Barron about the delays. Kesterson
testified he told Barron he would give her to the end of the week to get the reports current before
making a thorough investigation. 

 Barron testified she discussed the delayed summary reports with Goldsmith. Goldsmith
offered to come to New Boston and discuss the matter with Kesterson and Baird, but Barron told
Goldsmith to file all late reports. Nevertheless, Goldsmith came to Barron's office in New Boston. 
She wanted to meet with Kesterson and Baird, but Barron again told her to go back to Texarkana and
file the late summary reports. 


 Later that day, Barron visited the Texarkana office, where she found Goldsmith at work
"getting [the reports] caught up." Barron visited the Texarkana office again later that week and
reiterated that all the weekly summary reports were to be submitted to Baird by the end of the week. 
 Barron testified that, on Friday, she received a summary report with a deposit slip that was
not bank-stamped. She called Goldsmith, who agreed to bring the deposit slip to New Boston. 
Goldsmith called Barron later and asked Barron to meet her in the parking lot. Goldsmith arrived
with her husband, walked up to Barron, and handed her the keys to the Texarkana office. Barron
testified Goldsmith told her, "I spent the money, I don't have the money, the money's gone, I've
ruined my life, I've ruined my husband's life, I've ruined my children's life, I'm going to prison." 
Barron asked her how much money, and Goldsmith responded, "eighty something thousand dollars." 
 Barron testified Goldsmith's husband said he did not know anything about the matter until the
previous night and was trying to borrow the money to pay the county back. She testified Goldsmith
asked her not to report the matter until Goldsmith had told her children. 

 Kesterson testified he performed an audit of the Texarkana office that showed $139,339.05
missing.  Around  $137,000.00  of  that  money  was  shown  on  the  daily  summary  reports  for
September 20, 21, and 22, but was not deposited in the bank. The sum of $1,224.00 was from a
shortage in the Parks and Wildlife drawer. 

 In reviewing the legal sufficiency of the evidence, we look to see whether, after viewing all
of the evidence in the light most favorable to the prosecution, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 319 (1979); Lane v. State, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996). We evaluate all of
the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. 
Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

 As   alleged   in   the   indictment,   the   State   had   to   prove   Goldsmith   (1)   unlawfully,
(2) appropriated property in an amount greater than $100,000.00 but less than $200,000.00, (3) with
the intent to deprive the owner of the property, (4) pursuant to one scheme or continuing course of
conduct, and (5) that Goldsmith was at the time of the theft a public servant who came into
possession of the property by virtue of her status as a public servant. See Tex. Pen. Code
Ann. § 31.03(a), (f)(1) (Vernon Supp. 2003).

 Goldsmith first contends there was insufficient evidence to show the value of the property
taken exceeded $100,000.00. However, a reasonable jury could have concluded the value of the
property taken was greater than $100,000.00. Kesterson testified Goldsmith submitted daily
summary reports showing approximately $137,000.00 of transactions in the Texarkana office, but
did not submit bank-stamped deposit slips showing a corresponding deposit of those funds. Barron
testified Goldsmith admitted taking and spending over $80,000.00, and the jury could have rationally
concluded Goldsmith misstated or lied about the amount she appropriated.

 Goldsmith contends Kesterson testified he did not know whether Goldsmith prepared the
daily summary reports he used to prepare his audit. However, there was considerable testimony that
Goldsmith was the only person in the Texarkana office to prepare the daily summary reports and
make the deposits in the two years preceding the theft. Braley testified the daily summary reports
and deposit slips were always in Goldsmith's handwriting.

 Goldsmith also points to evidence that the employees in the Texarkana office regularly
floated checks in their own drawers and in the Parks and Wildlife drawer. However, there was also
testimony that no checks had been returned for insufficient funds except one written by Goldsmith. 
Further, the shortage in the Parks and Wildlife drawer amounted only to $1,224.00; over
$137,000.00 resulted from amounts shown on the daily summary reports that were not deposited in
the bank.

 Goldsmith also contends the evidence is legally insufficient because there is no evidence
establishing she took the money. However, Barron testified Goldsmith admitted taking and spending
over $80,000.00. A reasonable jury could have concluded, based on her admission, that Goldsmith
committed the theft.

 We affirm the judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 15, 2002

Date Decided: December 4, 2002


Do Not Publish



herwise.

 The trial court's order is affirmed.


 Ben Z. Grant

 Justice




Date Submitted: May 8, 2002

Date Decided: June 27, 2002


Publish